UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

CHANH CHAN LAO,

                    Petitioner,

          vs.

DEBORAH SCHULT, Warden, Federal
Correctional Institute Ray Brook,

                    Respondent.

No. 9:09-cv-00653-JKS

MEMORANDUM DECISION

          Petitioner, Chanh Chan Lao, a federal prisoner proceeding *pro se*, has filed a petition for

habeas corpus relief under 28 U.S.C. § 2241.  Lao is currently in the custody of the U.S. Bureau

of Prisons ("BOP"), incarcerated at the Federal Correctional Institute Ray Brook, New York.

Respondent has answered the petition.  Lao has not replied.

I.  BACKGROUND/ADMINISTRATIVE PROCEEDINGS

          Lao is serving a 20-year-prison term following his conviction for various Class C felony

drug-related offenses.  Lao does not challenge his conviction in this proceeding.

          On March 17, 2009, following a two-month-long investigation, Lao received a

Disciplinary Incident Report dated March 16, 2009, charging him with assaulting another

prisoner on January 15, 2009.  The Incident Report was submitted to the Unit Discipline

Committee ("UDC"), which held an initial hearing on March 19, 2009.  The UDC forwarded the

Incident Report to a Discipline Hearing Officer ("DHO") in order to enable the imposition of greater sanctions than those available to the UDC.  The DHO held a disciplinary hearing on March 23, 2009.  In his report, dated and delivered March 24, 2009, the DHO found Lao guilty of a lesser offense.  As punishment, the DHO disallowed seven days of Lao's good time, imposed 15 days of disciplinary segregation, forfeited 20 days of non-vested good time, and restricted Lao's commissary and visiting privileges for 180 days.[1]

Lao filed a Request for Administrative Remedies dated April 9, 2009, with the Northeast Regional Office, challenging the DHO report.[2]  The Northeast Regional Office received and filed the request on April 15, 2009, and rejected it as untimely the next day.[3]  Lao appealed the rejection to the Central Office on April 23, 2009.[4]  The Central Office received Lao's appeal on May 5, 2009, and, concurring with the Northeast Region's rationale, rejected and returned Lao's appeal on May 20, 2009.[5]  Lao timely filed his petition for relief in this Court on June 2, 2009.

II.  GROUNDS RAISED/DEFENSES

In his petition, Lao asserts a single substantive ground:  that Respondent violated Bureau of Prisons policy by not serving Lao with the incident report until more than 60 days after the incident.  Respondent contends that Lao has not exhausted his administrative remedies.

---

[1] Docket No. 1-2, p. 4-5.

[2] Docket No. 1-2, p. 7.

[3] Docket No. 6-1, p. 16.

[4] Docket No. 1-2, p. 8.

[5] Docket No. 6-1, p. 17.

III.  DISCUSSION

**A.  Exhaustion**.

Respondent contends that, because Lao did not timely file his appeal with the Northeast Regional Office, he has not exhausted his administrative remedies.  Under controlling Second Circuit law, a federal prisoner must exhaust his intra-BOP administrative remedies before seeking habeas relief under § 2241.[6]  This procedural default may only be excused upon a showing of good cause and prejudice.[7]

Lao has not traversed Respondent's answer.  28 U.S.C. § 2248 provides:

> The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.

Ordinarily, under § 2248, when there is no denial of the Respondent's allegations in the answer, or the denial is merely formal unsupported by an evidentiary basis, the court must accept Respondent's allegations.[8]  When no traverse is filed and no evidence offered to contradict the allegations of the return, they must be accepted as true.[9]  In this case, whether or not Lao's administrative appeal was submitted timely may be determined from evidence in the record.[10]

---

[6] *Guida v. Nelson*, 603 F.2d 261, 262 (2d Cir. 1979) (per curiam).

[7] *Carmona v. U. S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001).

[8] *See Carlson v. Landon*, 342 U.S. 524, 530 (1952).

[9] *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66 (2d Cir. 1952) (per curiam).

[10] Lao anticipated the defense raised by Respondent and addressed the issue in his petition as his first ground.  Thus, Lao has effectively controverted this defense, placing it at issue.

In rejecting and returning Lao's appeal, both the Northeast Regional Office and Central Office simply stated:

> YOUR APPEAL IS UNTIMELY.  REGIONAL APPEALS (BP-10) MUST BE RECEIVED WITHIN 20 DAYS OF THE WARDEN/CCM RESPONSE OR RECEIPT OF THE DHO REPORT.  THIS TIME INCLUDES MAIL TIME.[11]

In his second-level appeal to the Central Office, Lao alleged that he was not given the form to file his appeal until April 9, 2009, which he immediately completed and mailed the next day.  Lao contended that he was not only diligent in pursuing his appeal, but also that the mailbox rule applied.[12]  In upholding the decision of the Northeast Regional Office, the Central Office simply concurred with the Northeast Region's rationale for rejecting the appeal without further reasoning.[13]

Under Bureau of Prisons regulations, an appeal from the decision of a DHO is made directly to the Regional Office, without having to comply with the internal institution procedures.[14]  With respect to the time for submitting appeals to the Regional Office, the regulations provide:

> (a) *Submission*.  An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.  An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response.  When the inmate demonstrates a valid reason for delay, these time limits may be extended.  Valid reasons for delay include those situations described

---

[11] Docket No. 1-2, p. 6 (upper case in the original); 1-2, p. 9 (upper case in the original).

[12] Docket No. 1-2, p. 8.

[13] Docket No. 6-1, p. 17.

[14] 28 C.F.R. § 542.13(b), (d).

in § 542.14(b) of this part.  Appeal to the General Counsel is the final administrative appeal.[15]

Section 542.14(b) provides in relevant part:

> Valid reasons for delay include the following:  an extended period in transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

The regulations also provide that an "inmate shall obtain the appropriate form from CCC staff or institution staff (ordinarily, the correctional counselor)."[16]  The regulations further provide:

> The inmate shall date and sign the Appeal and mail it to the appropriate Regional Director, if a Regional Appeal, or to the National Inmate Appeals Administrator, Office of General Counsel, if a Central Office Appeal.[17]

In his petition, Lao asserts that excusable neglect excuses his failure to file his appeal with the Northeast Regional Office.  Respondent argues that Lao did not raise this issue in the administrative appeal process and is, therefore, procedurally barred from bringing it before this Court in this habeas proceeding.  Respondent is factually incorrect—in his appeal to the Central Office Lao not only asserted good cause for the delay, but also raised the question of the application of the mailbox rule.  The Central Office did not address either issue.

Respondent does not cite any BOP regulation that:  (1) requires an appeal be received within 20 days of an adverse decision by the warden; (2) defines the term "submit," as used in § 542.15(a), as meaning that the appeal must be received by the Regional Office; or (3) the 20-

---

[15] 28 C.F.R. § 542.15(a).

[16] 28 C.F.R. § 542.14(c).

[17] 28 C.F.R. § 542.15(b)(3).

day-time limitation includes mail time.[18]  Nor did an independent review of § 542 of the BOP regulations by this Court find any such requirements.

As noted above, the regulations specifically require an inmate to mail the appeal to the appropriate office.  To provide, by regulation, that an inmate must both use a form provided by prison authorities and the mail system for delivery of his appeal, over which prison authorities, not the inmate, have control, and then place the risk of delay in delivery on the inmate appears to be an unreasonable interpretation of the controlling regulation.

The procedure adopted by the BOP for processing disciplinary appeals clearly falls within the policy rationale underlying the prison mailbox rule—a *pro se* prisoner loses control over the appeal upon delivery to prison officials and subsequent delays may be attributable to the actions of prison authorities.[19]  In cases brought under the Antiterrorism and Effective Death Penalty Act of 1996, the Second Circuit has applied the prison mailbox rule in determining when a petition under state law was properly filed, notwithstanding the fact that the state law has rejected the mailbox rule.[20]  There does not appear to be any good reason for not applying the prison mailbox rule to administrative appeals within the Bureau of Prisons.[21]  This Court now holds that, with

---

[18] 28 C.F.R. § 542.18, which governs response time by the warden, Regional or Central Office, as appropriate, does specify "[i]f accepted, a Request or Appeal is considered *filed* on the date it is logged into the Administrative Remedy Index as received" (emphasis added) and measures the time within which the appeal must be processed from that date.

[19] *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988).  A delay attributable to staff is peculiarly within the control of prison authorities and difficult for the inmate to obtain without staff assistance or cooperation.  *Id.*

[20] *Fernandez v. Artuz*, 402 F.3d 111, 114-116 (2d Cir. 2005).

[21] *See Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (finding no difference between the filing of a court action and the filing of an administrative claim under the Federal

(continued...)

respect to administrative appeals filed by *pro se* inmates under 28 C.F.R. § 542.15, the prison

mailbox rule applies.[22]

      In this case, the record shows that Lao received the DHO report on March 24, 2009, and

mailed his Regional Administrative Remedy Appeal on April 10, 2009, 17 days later.  Thus,

applying the mailbox rule, Lao's Regional Administrative Remedy Appeal was submitted timely.

      Alternatively, this Court finds that, under the undisputed facts of this case, Lao acted with

due diligence in prosecuting his appeal to the Northeast Regional Office.  The prison officials did

not provide the required Regional Administrative Remedy Appeal form until 16 days after the

DHO report was delivered to Lao.  Lao completed the form the day he received it, and deposited

the completed form in the mail the following day.  Lao has exhausted his administrative

remedies.

**B.  Merits.**

---

[21](...continued)
Tort Claims Act).

    [22] This decision finds support in *Tapia-Ortiz*.  This Court recognizes that the Ninth
Circuit rejected application of the mailbox rule to the 1993 version of § 542.14 on the basis that
the regulation then specifically defined an appeal as filed "when the receipt is issued."  *Nigro v.
Sullivan*, 40 F.3d 990, 994 (9th Cir. 1994).  [Part 542 was revised in January 1996 (61 Fed. Reg.
81 (January 2, 1996))]  The *Nigro* court differentiated the *defined* term "filed" in that regulation
from the *undefined* terms "file" or "served" in *Houston* and its prior decision in *Faile v. Upjohn
Co.*, 988 F.2d 985, 988 n.4, 988-99 (9th Cir. 1993).  In this case the term "filed" is defined in §
542.18, however, the term "submit" in § 542.15 is not defined.  The First and Third Circuits have
noted this distinction in declining to apply *Nigro* to undefined terms before them.  *Casanova v.
Dubois*, 304 F.3d 75, 79 (1st Cir. 2002); *Longenette v. Krusing*, 322 F.3d 758, 762-64 (3d Cir.
2003).  Nor does this holding conflict with the Supreme Court's decision in *Fex v. Michigan*, 507
U.S. 43, 45 (1993) (declining to apply the *Houston* prison mailbox rule where the applicable
statute specifically provided that the time began to run when the request was received).

Because "[p]rison disciplinary proceedings are not part of a criminal prosecution, . . . the full panoply of rights due a defendant in such proceedings does not apply."[23]   Rather, to comport with procedural due process, an inmate charged with a violation in a disciplinary hearing must be given: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."[24]   Indeed, the Second Circuit has stressed, in the context of disciplinary proceedings, "the *only* process due an inmate is that minimal process guaranteed by the Constitution, as outlined in *Wolff*."[25]   Finally, with respect to the revocation of good time credits, due process requires that "the findings of the prison disciplinary board [be] supported by some evidence in the record."[26]

Lao argues that because he was not charged with an "Incident Report/Disciplinary Charge" within 72 hours as provided in the BOP's Policy Statement, his conviction should be reversed and expunged.   Attached to the petition is a page from P.S. 5270.07, dated December 29, 1987, entitled "TIME LIMITS IN DISCIPLINARY PROCESS."[27]   P.S. 5270.07 indicates that the time begins to run on the date the staff becomes aware of the inmate's

---

[23] *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974).

[24] *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454 (1985) (citing *Wolff,* 418 U.S. at 563-67).

[25] *Shakur v. Selsky,* 391 F.3d 106, 119 (2d Cir. 2004) (emphasis in original).

[26] *Hill,* 472 U.S. at 454.

[27] Docket No. 1-2, p. 11.   Respondent has not contested admissibility of the excerpt from P.S. 5270.07.   Consequently, for the purposes of this case, this Court takes judicial notice of that excerpt.   Fed. R. Evid. 201.

involvement in an incident.  Ordinarily, the Incident Report giving the inmate notice of the charges must be delivered within 24 hours.  P.S. 5270.07 also indicates that the maximum time for holding the initial hearing before the UDC is three working days from the date staff becomes aware of the incident.

Respondent counters that the staff was not aware of Lao's involvement in the incident until March 16, 2009, as stated on the Incident Report.[28]  This Court finds this argument lacks factual support and is without merit.  It is clear from the record that the staff was aware of Lao's involvement no later than the day following the incident, as evidenced by the fact that Lao was placed in administrative detention as result of his participation in the incident that formed the basis for the disciplinary action taken.[29]  The record also reflects that on February 19, 2009, some 26 days before the Incident Report was served on him,  Lao admitted to being involved in the incident during an interview with the investigating officer.[30]  Standing alone, however, his admission is not of any particular assistance to Lao.

Lao is entitled to relief if the action taken by the Respondent was "in violation of the Constitution or laws or treaties of the United States."[31]  Lao has not alleged a federal constitutional violation, nor does the record reveal that a constitutional violation occurred.  It is clear that the due process requirements of *Hill* have been met in this case.  Indeed, standing alone, the fact that Lao admitted to his involvement in the incident is sufficient to satisfy the

---

[28] Docket No. 6-1, p. 19.

[29] Docket No. 1-2, p. 2.

[30] Docket No. 1-2, p. 7.

[31] 28 U.S.C. § 2241(c)(3).

"some evidence" standard of *Hill*.   Thus, Lao is entitled to habeas relief only if the action of the Respondent violated some law of the United States.

Although regulations promulgated by a federal agency in accordance with authority delegated by Congress under the Administrative Procedures Act have the force and effect of law,[32] policy statements, agency manuals, and enforcement guidelines lack the force of law.[33] Consequently, the fact that the procedure followed in this case may not have complied with P.S. 5270.07 does not entitle Lao to relief.  That does not, however, end this Court's inquiry.

The BOP regulations governing prison disciplinary actions enacted under Congressional authority are contained in Title 28, Part 541, Subpart B of the Code of Federal Regulations.[34] Section 541.15 "Initial Hearing" specifically provides in relevant part.

> (a) Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident.

> (b) Each inmate so charged is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident.  This three work day period excludes the day staff became aware of the inmate's involvement in the incident, weekends, and holidays.

Section 541.15, further provides:

> (k) The UDC may extend time limits imposed in this section for a good cause shown by the inmate or staff and documented in the record of the hearing.

---

[32] *See United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001).

[33] *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *cf. Reno v. Koray*, 515 U.S. 50, 60-61 (1995) (holding that the BOP's internal agency guideline in a Program Statement is akin to an interpretative rule, which, although not binding law, is nonetheless entitled to some deference).

[34] 18 U.S.C. § 4001(b)(1) (authorizing the Attorney General to promulgate rules for the governance of federal prisons).

It is incontestable that the lapse between the time when the staff probably became aware of Lao's involvement in the incident and when Lao was provided a copy of the Incident Report exceeded the 24 hours specified in § 541.15. It is likewise incontestable that the lapse between the time staff became aware of Lao's involvement in the incident and the initial hearing before the UDC exceeded three work days specified in § 541.15. Also, there is no indication in the record that the UDC extended the time for good cause as provided by § 541.15(k). The issue before this Court is complicated by the fact that the applicable regulation does not set a definite time frame. Instead the regulations use the somewhat ambiguous and nebulous term "ordinarily." This Court questions how an elapsed time some 60 times longer than "ordinarily" can be considered "ordinarily."

In this case, it is evident that the BOP regulations governing prison disciplinary proceedings, which have the force and effect of law, either were not followed or were misapplied. Thus, imposition of the disciplinary action herein was contrary to the laws of the United States.

The issue this Court must address is whether the apparently extraordinarily lengthy delay between the time of the incident and the initiation of disciplinary proceedings by the service of the Incident Report results in a forfeiture of, or bar to bringing, a disciplinary action. That issue turns on whether, under BOP practice, there is a presumption of prejudice as a result of the delay or whether the prisoner (Lao) must affirmatively establish prejudice. The BOP regulations do not directly address this issue; nor, as noted above, was it addressed during the administrative appeal process. In this case, neither the Northeast Regional Office nor the Central Office reached the merits of Lao's claim. Thus, while Lao's administrative remedies have been exhausted, as a

11

practical matter, they have not been exhausted on the merits.  The failure to reach the merits is a result of the BOP's actions, not Lao's.

This Court is not unmindful of the fact that the alleged error is not a structural error, which would not be subject to harmless error review.  If the controlling issue were one of guilt or innocence Lao would not prevail, as the error would clearly be harmless, *i.e.*, Lao admitted to having been involved in the incident.  As noted above, the issue is whether or not Lao should have been subjected to a disciplinary action at all.  If Lao should not have been subjected to disciplinary action in the first instance, the error was just as clearly not harmless.  The question, therefore, becomes, what relief will "dispose of [this] matter as law and justice require."[35]

This Court is of the opinion that the purposes for requiring administrative exhaustion—administrative autonomy, potentially obviating the need for judicial review and development of the administrative record—would be best served by remanding this matter to the BOP for determination of the administrative appeal on the merits.  Although not necessarily directly applicable, two general doctrines applicable to judicial review of agency actions further support this conclusion:  primary jurisdiction and ripeness.  Primary jurisdiction is a prudential doctrine designed to allocate authority between courts and administrative agencies.  Courts generally consider four factors when applying the doctrine of primary jurisdiction:  (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has

---

[35] 28 U.S.C. § 2243.

been made.[36]  Under the ripeness doctrine, also a prudential doctrine, courts will not review an

agency action until such time as the agency has completed its decision making process, *i.e.*, ruled

on the merits.[37]

Congress has charged the Attorney General with the responsibility of providing for the

"proper governance, discipline, treatment, care, rehabilitation, and reformation" of federal

prisoners.[38]  Prison discipline is an integral part of running a prison that requires expertise,

planning and the commitment of resources, and is a matter peculiarly within the province and

expertise of the BOP; a subject into which courts should interject only with caution.[39]  This is

particularly true when, as in this case, the prison officials violated BOP regulations in

administering discipline.  Accordingly, the fact that the BOP incorrectly declined to address the

issues in the internal administrative appeal process notwithstanding, it is appropriate that the

BOP be given the first opportunity to determine whether the procedures followed in this case

were consistent with its regulations and, if not, determine the appropriate remedy.  It will be so

ordered.

IV.  CONCLUSION

---

[36] *Schiller v. Tower Semiconductor, Ltd.*, 449 F.3d 286, 295 (2d Cir. 2006).

[37] *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

[38] 18 U.S.C. § 4001(b)(2); *see* 18 U.S.C. § 4042(a)(3) (requiring the BOP, under the direction of the Attorney General to "provide for the protection, instruction and discipline of" federal prisoners).

[39] *See Turner v. Safley*, 482 U.S. 78, 84-85 (1987); *Ponte v. Real*, 471 U.S. 491, 497 (1985) (observing that prison disciplinary proceedings "take place in tightly controlled environments peopled by those who have been unable to conduct themselves properly in a free society."); *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1996) (discussing the traditional "hands-off" policy of federal courts with respect to problems of prison administration), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).

The BOP erred in concluding that Lao's administrative appeal was not timely.  By applying the mailbox rule, this Court finds that Lao's administrative appeal was timely.  The applicable regulation requires that an inmate subject to discipline ordinarily receive a copy of the incident report within 24 hours of the incident requiring discipline.  Any situation that falls outside the ordinary triggers § 541.15(k) authorizing the UDC to extend the time for good cause shown.  No extension of time was sought or justified under that provision.  Thus, the unexcused failure to timely furnish the incident report within 24 hours of the time staff became aware of Lao's involvement in the incident violated the regulation.  The BOP should, in the first instance, consider whether Lao was harmed by the violation, what remedy Lao is entitled to receive for this violation of the regulation and what effect the violation should have on the discipline Lao should receive.  This Court assumes that the BOP will either consider the matter on the merits or expunge the discipline imposed from Lao's records.

## V.  ORDER

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus is **GRANTED**.

**IT IS FURTHER ORDERED THAT** this matter is remanded to the Central Office for further processing of Lao's appeal consistent with this Memorandum Decision.  If the Central Office has not rendered a decision on the appeal within 30 days after the decision of this Court becomes final, *i.e.*, it is no longer subject to direct review, Respondent is directed to expunge the disciplinary action from Lao's records.

The Clerk of the Court is to enter final judgment accordingly.

Dated: February 25, 2010.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge